Frank **BARHORST** et al., Appellants,

v.

The **CITY OF ST. LOUIS**, a Municipal Corporation, et al., Respondents.

No. 52268.

Supreme Court of Missouri,
En Banc.

Dec. 11, 1967.

As Modified Feb. 12, 1968.

Rehearing Denied Feb. 12, 1968.

Grove G. Sweet, Sweet, Schwarz & McGhee, St. Louis, for plaintiffs-appellants.

Thomas F. McGuire, City Counselor, Aubrey B. Hamilton, Assoc. City Counselor, Raymond A. Bruntrager, St. Louis, for defendants-respondents.

SEILER, Judge.

Plaintiffs, consisting of twenty-eight individuals and one corporation, instituted this action for a declaratory judgment challenging the constitutionality of (1) the enabling legislation for what is known as the "St. Louis earning tax," act approved April 21, 1954, Laws 1953, 2nd Ex.Sess., p. 14, now Secs. 92.110 to 92.200, RSMo 1959, V. A.M.S.; (2) the provision of the Charter of the City of St. Louis authorizing the earnings tax; and (3) the St. Louis ordinances imposing the tax. The trial court sustained defendants' motion to dismiss the petition and plaintiffs have appealed.

The individual plaintiffs may be classified into two groups: (1) nonresidents of the City of St. Louis who have earned wages or received other compensation for services performed in said city, and (2) residents of the City of St. Louis who have earned wages or received other compensation for services performed either in or outside the said city. The corporate plaintiff had profits from its activities within the said city.

Plaintiffs first assert that the St. Louis ordinance, together with the provision of the Charter of the City of St. Louis and Secs. 92.110 to 92.200, Supp. RSMo 1965, V.A.M.S., are unconstitutional "in selecting earned income as the subject of taxation, to the exclusion of unearned income such as rents, dividends, interest and the like," because they thereby adopt "an arbitrary and unreasonable classification" in violation of Sec. 3, Art. X, 1945 Constitution, V.A.M.S., ("Taxes * * * shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."), and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

Sec. 92.210, Supp. RSMo 1965, V.A.M.S., provides that certain charter cities, which include the City of St. Louis, are "hereby authorized to levy and collect, by ordinance for general revenue purposes, an earnings tax on the salaries, wages, commissions and

other compensation earned by its residents; on the salaries, wages, commissions and other compensation earned by nonresidents of the city for work done or services performed or rendered in the city; on the net profits of associations, businesses or other activities conducted by residents; on the net profits of associations, businesses or other activities conducted in the city by nonresidents; and on the net profits earned by all corporations as the result of work done or services performed or rendered and business or other activities conducted in the city." Neither the enabling act, the Charter provision, nor the ordinance authorizes the imposition of an earning tax on what has been termed "unearned income". The ordinance does not purport to impose such a tax.

Although statements of the general principles applicable to this contention of plaintiffs may be found in numerous Missouri and other cases, a complete and inclusive statement is set forth in 84 C.J.S. Taxation § 36, as follows:

■ "As a general rule, within constitutional limitations, the state has power to classify persons or property for purposes of taxation, and the exercise of such power is not forbidden by the constitutional requirement that taxation be uniform and equal. So the legislature may arrange and divide the various subjects of taxation into distinct classes and impose different rates on the several classes, or tax one class to the exclusion of the others, without violating the requirement of equality and uniformity, and it may exercise wide discretion in selecting and classifying the subjects of taxation, provided the tax is uniform on all members of the same class, and provided the classification of the subjects of taxation is reasonable and provided the classification of the subjects of taxation, as has been held, is not arbitrary."

See also the statement of this rule in State ex rel. Transport Manufacturing & Equipment Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996. 1000.

■ The power to classify for tax purposes is primarily in the legislature and not in the courts, and laws should not be declared invalid unless it clearly appears that they transgress some constitutional provision. Aetna Cas. & Sur. Co. v. Smith, 36 Del.Ch. 391, 131 A.2d 168. There is no fixed standard or "precise yardstick" as to reasonableness of classification, Conard v. State, 2 Terry, Del., 107, 16 A.2d 121, but the classification cannot be " 'palpably arbitrary.' " State ex rel. Transport Manufacturing & Equipment Co. v. Bates, supra. It is not necessary that the court perceive the precise legislative reason for the classification, and the legislature is not required to preamble or label its classification for tax purposes, or disclose the principles on which they are made. It is sufficient if the court, on review, may find them supported by "justifiable reasoning." 84 C.J.S. Taxation § 36 at p. 121.

■ The issue thus becomes whether the classification by the legislature of "salaries, wages, commissions and other compensation earned," without including "unearned" income from "rent, dividends, and interest and the like" (to use plaintiffs' language), is so unreasonable and arbitrary as to fail to meet constitutional standards.

■ Plaintiffs cite no case precisely in point which supports their position. They rely primarily on the Bates case cited above, and cite several other cases in which general principles are stated. We reach the conclusion that the classification of "salaries, wages, commissions and other compensation earned" for purposes of a city earnings tax has a reasonable basis and is not arbitrary. Rent, dividends, and interest are derived primarily from property already subject to a city tax if within the jurisdiction, and a classification to avoid double taxation has been recognized as constitutionally sound, In re Miller's Estate, 239 Wis. 551, 2 N.W. 2d 256, 139 A.L.R. 1056. It was stated in Colchensky v. Oklahoma Tax Commission, 184 Okl. 207, 86 P.2d 329, "That the Legislature had the right to classify and place in

different classes incomes derived from tangible and intangible sources has not been questioned and cannot be denied."

The only case we have found that might be considered to be substantially in point is Marshall v. South Carolina Tax Commission, 178 S.C. 57, 182 S.E. 96, 98. In that case the tax was placed on income received from interest and dividends but not on income received from personal or professional service. The court said this: "The complaint also alleges that the act makes a hostile and arbitrary discrimination against persons whose income is received from interest and dividends and in favor of persons whose income is received from other sources, and thus creates an illegal classification. I do not think this objection sound. The Legislature has exceedingly broad powers in classifying subjects for taxation. * * * I think it is sufficient to say that the Legislature may put in one class and tax differently persons who receive interest and dividends from those who earn an income otherwise, that is, by personal or professional service. The plaintiff must be able to satisfy the court that the classification has its origin in nothing better than whim and fantasy and tyrannical exercise of arbitrary power, before the tax in question will be stricken down." For these reasons we conclude that the classification in this case meets constitutional requirements and limitations.

Plaintiffs next assert that the earnings tax is arbitrary and void in that it "unreasonably discriminates between resident individual taxpayers and resident corporate taxpayers" because it taxes the "entire earned income of the individual, but only that earned in the City by the corporation."

As to resident individuals the tax is imposed on compensation earned for services performed within and without the city. The tax as to corporations is imposed on "the net profits * * * as a result of work done or services performed or rendered, and business or other activities conducted in the city."

■ Plaintiffs cite only Quaker City Cab Co. v. Commonwealth of Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927. We do not consider that case to be in point and controlling. There a tax was placed on the gross receipts of every transportation company only if owned by corporations but not if owned by individual or partnerships, and the tax was held to be discriminatory. That case presents no analogy between the classification there and the classification in this case. " 'The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' " Walters v. City of St. Louis, banc, 364 Mo. 56, 259 S.W.2d 377, and plaintiffs have not done so in this case.

■ However, it is our conclusion that the classification is not subject to constitutional objections. It was expressly held in the Walters case, cited above, and in Walters v. City of St. Louis, 347 U.S. 231, 236, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665, that a classification for tax purposes of earned income by individuals as against net profits of corporations was a reasonable and valid classification. In the latter case it was said: "* * * [T]he ordinance classifies incomes for taxation according to their sources, one category consisting of salary and wage income and the other of profits from self-employment or business enterprise. Classification of earned income as against earned profits is not uncommon * * * [i]t is a classification employed extensively in federal taxation * * * We cannot say that a difference in treatment of the taxpayers deriving income from these different sources is per se a prohibited discrimination." The court then distinguished Quaker City Cab Co. v. Commonwealth of Pennsylvania on the basis that there was "discrimination between identical sources of revenue depending only on the unincorporated or incorporated character of the taxpayer. * * * Here the classification rests on the State's view that wage or salary income is relatively fixed, predictable and certain, while profits of business are fluctuating and unstable." Taxation of net in-

come of a corporation limited to property owned or business done in the state is not an uncommon practice. 84 C.J.S. Taxation § 138, p. 277. Missouri state income tax on a Missouri corporation is limited to income from "sources in this state," Sec. 143.040, while the income tax as to a resident individual applies to all income "from all sources," Sec. 143.010, but with a deduction permitted for income on which tax is paid in another state, Sec. 143.160(5). When authorized classifications are made, a rigid rule of absolute equality of taxation between classes is not necessary. The classification in this case is not in violation of constitutional provisions.

Plaintiffs next contend that the enabling act is unconstitutional in that without any mention being made in the title of the act, the act purports to exempt from the tax certain insurance and express companies. They further assert that the effect of striking the exemption provision of the act is to broaden the act to include a coverage not intended, and for that reason the entire act is void, and the ordinance necessarily must fail. But as we see below such is not the case under the particular circumstances here.

The title of the act approved April 21, 1954, Laws 1953, 2nd Ex.Sess., p. 14, now Secs. 92.110–200, RSMo 1959, V.A.M.S., does not disclose the fact that the income referred to in Secs. 143.120 to 143.150, RSMo 1949, V.A.M.S., as not being subject to state income tax, shall not be taxable under any tax ordinance enacted pursuant to the enabling act. But the ordinance before us was not enacted pursuant to section 1 of the act, which provided that the city "is hereby authorized to levy and collect" an earnings tax, because that authority by the terms of the act expired April 15, 1957, at the latest. The 1% ordinance before us, now part of Chapter 145 of the Revised Code of St. Louis, was not adopted until July 24, 1959. This ordinance derives from section 10 of the 1954 act, which made possible the submission to the vot-

ers of St. Louis of an amendment to the city charter giving the city power to levy an earnings tax, which amendment was adopted by the voters on September 30, 1954. In section 10 of the 1954 act the legislature said that any constitutional charter city with population in excess of seven hundred thousand could at any time prior to April 15, 1957, by charter amendment authorize its legislative body to impose "any tax defined under this Act"—that is, an earnings tax. This the legislature had power to do under Sec. 11(f), Art. X, 1945 Constitution. St. Louis accepted the offer, amended its charter, and has since acted under the charter as amended. Its ordinance, Sec. 145.080, provides that the income referred to in Secs. 143.120 to 143.150, RSMo 1949, as not being subject to the state income tax, shall not be taxable under the ordinance. Therefore, the income which the legislature did not want subject to the earnings tax is not being taxed by the ordinance imposing the St. Louis earnings tax. This result is not being reached by the section of the 1954 act which declared that such income was not taxable, section 6. It is reached by the ordinance, Sec. 145.080 of which provides that said income is not taxable under the ordinance. Plaintiffs argue that if section 6 is void, then, since it is an exemption, the entire 1954 act is void, because the effect of voiding an exemption but not voiding the entire act would be to leave the act with a coverage which the legislature did not intend, in fact expressly disclaimed. But does this result follow where the city, as here, avails itself of the opportunity to amend its charter by popular vote so as to authorize its own legislative body to impose the "tax defined" under the 1954 act? No, because the city is then levying the tax under the authority of the charter amendment and it does not necessarily follow that the coverage will be expanded beyond what the legislature intended. Here, for example, we see that it has not. We need not concern ourselves as to what the situation would be if the city were, under its charter authority, to attempt to tax such income. That situation is not before us and

plaintiffs are in no position to complain about it. We therefore overrule plaintiffs' contention that the earnings tax ordinance is unconstitutional on the ground that the entire 1954 act is void for failure to mention in the title the exemption of certain income.

■■ Another contention made by plaintiffs is that the exclusion of certain income which is not subject to the state income tax from the coverage of the earnings tax also does violence to the unformity clause of the constitution, Sec. 3, Art. X; that, as plaintiffs put it, " * * * this is a significant exemption, for buried in Section 143.120, R.S.Mo., amid non-profit, charitable and mutual co-operative organizations of one type or another, most of which would not have had 'net profit' in any event, is an exemption from state income tax for insurance companies which pay a premium tax and express companies which pay a gross receipts tax to the State"; that this is a classification not related to any proper purpose, which therefore destroys the uniformity of the tax in the territorial limits of the city. However, the earnings tax is for general revenue purposes and the city might decide that businesses which are sufficiently different that the state foregoes income tax from them and instead measures their tax in terms of percentages of gross premium receipts or gross receipts (as is done with insurance companies and express companies) are not suitable subjects for application of its earnings tax. It might be that the difficulty in determining what was "net profit" in the insurance or express company business caused the city to decide against including such businesses or assuming the task of examining their books and records to verify the accuracy of their returns. Having the power to impose an earnings tax, it follows that the city has certain incidental powers of classification and differentiation, Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S.W.2d 532, 535; Springfield City Water Co. v. City of Springfield, 353 Mo. 445, 182 S.W.2d 613, 617; Airway Drive-In Theatre Co. v. City of St. Ann, (Mo.Sup.banc) 354 S.W.2d 858, 860. The

city, for example, could decide that the earnings tax would apply only to taxpayers with earnings or net profits above $50, although some might thereby escape entirely. It might decide that below a certain point collection was not worth the administrative time and expense involved.

Plaintiffs argue that the city has no power to grant any exemption or exclusion unless expressly authorized by statute, which authorization they say is contained only in section 6 of the 1954 act which, as stated above, they contend is void. Plaintiffs cite State v. Hannibal & St. Joseph R. Co., 75 Mo. 208, and Vrana v. City of St. Louis, 164 Mo. 146, 64 S.W. 180. However, these cases involve situations where the city agreed with the railroad that in exchange for keeping the railroad's shops in the city, or by acceptance of a dedication of streets to the city, no tax or assessment would be charged. It is clear the city would have no authority to grant this sort of exemption from taxation, but this is not the situation before us. While the city has not declared its precise reason for the exclusion under consideration, it is apparent the burden of the earnings tax falls alike on all persons who are in substantially the same situation, that there are valid grounds of distinction between the businesses whose income is excluded and those not, and that a reasonable basis exists for a difference in treatment. We overrule plaintiffs' contention that the exclusion violates the uniformity clause.

Another proposition advanced by plaintiffs is that the penalty provisions of the ordinance are invalid because they provide for imprisonment for debt, in violation of Sec. 11, Art. I, of the 1945 Constitution, and because the penalty provisions exceed the grant of authority to the city by the state; that the taxpayer is required at the time of filing to pay the tax due, that without payment there can be no filing, that the alternative to filing is the city workhouse and that this is imprisonment for debt.

■ The ordinance makes it a violation of the Municipal Code, punishable upon

conviction by fine or imprisonment, for a taxpayer to fail to make a return, or to permit the collector to examine his books and records, or knowingly to make a false return or to attempt to avoid full disclosure of earnings or profits. It also requires the taxpayer making the return, at the time of filing, to pay the collector the amount of tax shown due (a not unusual provision, as witness state and federal income tax practice), but attaches no penalty for failure to pay on time except 6% interest and a 1% per month penalty. Imprisonment for nonpayment of a fine for violation of the ordinance by failing to file a return would not constitute imprisonment for debt, Thunder Oil Company v. City of Sunset Hills, (Mo. Sup.banc) 349 S.W.2d 82, 89. The ordinance does not attempt to authorize imprisonment of a taxpayer for failure to pay the tax, nor does it make payment of the tax a condition precedent to filing, although it does require payment at the time the return is filed. Plaintiffs are correct that they cannot be barred from filing on time by refusal of the collector to accept the returns unless accompanied by payment in full, but such unauthorized practice or regulation by the collector does not invalidate the ordinance or the penalty section thereof, Walters v. City of St. Louis, (banc) 364 Mo. 56, 259 S.W.2d 377, 384–385.

■ As to plaintiffs' assertion that the city has arrogated unto itself the power to impose a penalty for failure to file an earnings tax return and that no such authority has been granted the city in the enabling act, this is answered, as defendants point out, by the fact that both the enabling act and the charter amendment confer power upon the city to "collect" the tax. This gives the city power to require the filing of a return or other appropriate form of report. "Power to levy and collect taxes, it is commonly held, carries with it the implied power to employ the necessary and usual procedure to execute the power and collect the revenue contemplated by the grant of power to make the levy", McQuillin, Municipal Corporations, 3rd Ed. (Revised), Sec.

44.131. Also, as defendants point out, Art. I, Sec. 1 (34) of its constitutional charter gives the city authority to impose a penalty to enforce its ordinances. We therefore rule this point against plaintiffs.

Judgment affirmed.

All concur.

### On Rehearing

PER CURIAM:

■ Appellant's motion for rehearing says that since Count II of the petition seeks an injunction against pending prosecutions, those of the plaintiffs who are under prosecution for violation of the ordinance do have standing to challenge the ordinance, charter amendment, and statute, on the basis of an unconstitutional discrimination even though they do not fit in the precise class discriminated against; that the opinion therefore has failed to pass on the claimed unreasonable distinction between resident individuals engaged in business who are taxed on their net profit *whenever earned* and incorporated companies which are taxed only upon their net profits from business conducted *in the city*; that the Walters v. City of St. Louis cases, referred to in the opinion, are not in point because they dealt merely with discrimination between taxing the gross salaries and wages of employed individuals on one hand, but only the net profits of the self-employed and business corporations on the other; that our present opinion holds in essence plaintiffs failed to sustain their burden of proof that the discrimination was in fact arbitrary and unreasonable, despite the fact that plaintiffs' allegations in this regard were admitted by the motion to dismiss; that the court should have, under the circumstances, returned the case for evidence to determine whether the classification can be shown to be arbitrary and unreasonable.

However, as appellants tacitly concede, and as the allegations of the petition ex-

pressly show, none of the plaintiffs claims to be an individual resident of St. Louis conducting a business from which he earned net profits outside as well as in the city. Hence, none could be directly adversely affected by the difference in treatment, assuming, without deciding, that such is unconstitutional. Therefore, plaintiffs are not in position to raise the point, Missouri Pacific Railroad Co. v. Morris (Mo.Sup. banc) 345 S.W.2d 52, 60, 88 A.L.R.2d 798; Ex parte Lockhart, banc, 350 Mo. 1220, 171 S.W.2d 660, 666; State v. Armour Pharmacy, Inc., (Mo.Sup.) 152 S.W.2d 67, 68; Stouffer v. Crawford (Mo.Sup.) 248 S.W. 581, 585. Appellant cites State v. Bengsch, 170 Mo. 81, 70 S.W. 710, 719 for the proposition that one under prosecution "may raise the question of the constitutionality of a discrimination which would invalidate the Act, even though he may not fit in the precise class discriminated against". An examination of the Bengsch case, 70 S.W. l. c. 719, however, shows it involves the situation where the act in question "* * * was framed and enacted as an *entirety*, and would not have received the legislative sanction but for the fact that it was intended to operate as a whole. Then, this being the case, any party prosecuted under the challenged act may raise the question of the unconstitutionality of a portion of the act, in the circumstances already related, and thereby show *the invalidity of the whole* * * *" (Emphasis added). In the Bengsch case the court held the act was invalid in its entirety.

 But in the present case even if the portion of the original act, S.B. 3, Laws 1953, 2nd Ex.Sess., p. 14, approved April 21, 1954, which referred to an earnings tax "on the net profits of associations, businesses or other activities conducted by residents" were invalid, it would not make the balance of the act invalid. The group of taxpayers so described was only one of five different groups separately described, was probably the smallest numerically of all the groups, and very likely was not expected to produce a major part of the revenue. It was well known the City of St. Louis needed additional tax revenues, Walters v. City of St. Louis, banc, 364 Mo. 56, 259 S.W.2d 377, 380, and that the earnings tax provided by the 1951 act, H.B. 50, Laws 1951, p. 334, expired April 1, 1954. S.B. 3, supra, contained an emergency clause. We do not believe there is the slightest doubt but that the legislature would have enacted the other provisions of the 1954 bill without the one claimed by appellants to be void. We see no reason why the other provisions of the bill standing alone, are not complete and capable of being executed in accordance with the legislative intent without the allegedly void portion mentioned above. This being so, the rule announced in the Bengsch case is not available to appellants here. We note there is no severability clause in the 1954 or succeeding acts, but this is of no significance in determining whether the entire statute must fall, Sec. 1.140, RSMo 1959, V.A.M.S.; St. Louis County v. City of Florissant (Mo.Sup.) 406 S.W.2d 281, 285. We accordingly overrule appellants' point above set out and discussed.

 In the motion for rehearing, plaintiffs also point out that section 10 of the 1954 act was repealed in 1959, by S.B. 27, approved April 23, 1959. S.B. 27 increased the amount which could be levied from ½% to 1%. In lieu of section 10 it enacted a section to be known as 92.200 providing as follows:

"No ordinance enacted under this act shall be effective unless it is authorized pursuant to a charter amendment of such city; provided, that any ordinance authorized by charter and presently in effect shall remain in effect until an ordinance is adopted under the authority of this act."

S.B. 27 did not affect the charter amendment, adopted by the St. Louis voters, September 30, 1954, or the ordinance carried forward thereunder, because the proviso in S.B. 27 specifically continued in effect any ordinance presently in effect and authorized by charter amendment. Then, pursu-

852

ant to S.B. 27, on July 14, 1959, the voters of St. Louis adopted a charter amendment authorizing the increase from ½% to 1%. On July 24, 1959, an ordinance was enacted setting the rate at 1%, which ordinance, together with other ordinances pertaining to the earnings tax, became Chapter 145 of the Revised Code of St. Louis. This is the ordinance before us.

By S.B. 65, Laws 1961, p. 219, approved June 27, 1961, Secs. 92.170 and 92.200, RS Mo 1959, V.A.M.S., were repealed. A new Sec. 92.170 was enacted lowering the amount which an employer could retain as compensation for collection of employee's taxes by withholding from 3% to 1½%. A new Sec. 92.200 was also enacted providing:

"No ordinance enacted under this act, except an ordinance limited to the purposes of section 92.170, shall be effective unless it is authorized pursuant to a charter amendment of such city; provided that any ordinance authorized by charter and presently in effect shall remain in effect until an ordinance is adopted under authority of this act."

Pursuant to S.B. 65, St. Louis did enact an ordinance reducing the employer's compensation for withholding from 3% to 1½% November 1, 1961. It took no action on the earnings tax as such however, as the proviso in Sec. 92.200, as enacted by S.B. 65, continued the effect of the charter amendment adopted July 14, 1959, and the ordinances enacted pursuant hereto.

It is clear, therefore, that the St. Louis earnings tax has continued to exist by virtue of a charter amendment, first for ½% and then for 1%, authorizing its legislative body to impose the tax defined by the 1954 act. The fact continues that the income which the legislature did not want subject to the earnings tax is not being taxed by the city and the fact also continues that this result is not being reached by Sec. 6 of the 1954 act, but by Sec. 145.080 of the ordinance. As stated in the original opinion we

need not concern ourselves as to what the situation would be if the city were, under its charter amendment authority, to attempt to tax such income. We therefore, overrule plaintiff's contention that the repeal of Sec. 10 of the 1954 act requires a change in the result of our decision.

As to the remaining portions of the motion for rehearing, it is fair to say they are either reargument of issues determined by the opinion or relate to matters which cannot be said to be material as to law or fact or to have been overlooked or misinterpreted by the court, see rule 83.16, V.A.M.R. The motion is therefore in all respects overruled.