Gerald Lester **HEWITT**, Appellant,

v.

Dr. **Edwin C. MASTERS** and Bess Masters, Respondents.

No. 51032.

Supreme Court of Missouri,
Division No. 2.

July 11, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Sept. 12, 1966.

See also Mo., 386 S.W.2d 9.

Dalton, Treasure & Bullard, John Hall Dalton, Kennett, for appellant.

Elvis A. Mooney, Briney, Welborn & Spain, Joe Welborn, James E. Spain, Bloomfield, for respondents.

STORCKMAN, Judge.

This is a suit to recover damages for personal injuries suffered by the plaintiff when an automobile driven by one of the defendants struck one of two automobiles between which the plaintiff was standing, forcing them together and against the plaintiff thereby severely injuring him. The case was submitted to the jury on the humanitarian theory of negligence. The plaintiff obtained a judgment for $25,000 against both defendants, Dr. Edwin C. Masters and his wife Bess Masters. The trial court sustained the defendants' motion for new trial on the ground that plaintiff's verdict-directing instruction was erroneous and the plaintiff appealed from the order granting a new trial.

The accident occurred on July 18, 1961, at about 8 p. m. on Highway 25, two miles north of Aquilla, Missouri, in Stoddard County. At the place in question, the highway runs generally north and south and the pavement is blacktop, 22 feet wide with 8-foot shoulders on each side. It had been raining prior to the occurrence and there was evidence that some rain was still falling.

The plaintiff had gone from Malden in his Dodge pickup truck, accompanied by his son Harry Austin Hewitt, to a point north of Dutchtown to tow a Ford convertible back to Malden. The towline consisted of a chain running through a section of pipe extending from the rear of the Dodge truck to the front of the Ford. On the return trip to Malden, the plaintiff drove the Dodge south on Highway 25 and his son occupied and steered the Ford which was being towed. It appears they stopped a time or two to check the equipment. The last time was on the south slope of a hill north of Aquilla. The plaintiff and his son testified that both motor vehicles were driven off of the pavement and stopped completely on the west shoulder headed south and that taillights and headlights were lighted on both vehicles. While the plaintiff was standing between the two vehicles near the towline, the defendants' DeSoto automobile struck the Ford convertible in the rear and knocked it violently forward against the rear of the Dodge thereby injuring the plaintiff.

Dr. Masters and his wife Bess were joint owners of the DeSoto automobile. Mrs. Masters had served as a judge at a special election held on July 18, 1961, in Puxico Precinct of Stoddard County. At the time in question, she and Dr. Masters were taking the ballots to the courthouse in Bloomfield. Dr. Masters was driving the DeSoto south on Highway 25 at the time it overtook and crashed into the rear of the Ford convertible.

The main factual disputes were whether the Dodge truck and Ford automobile were on or off the pavement at the time of the collision, whether the taillights were burning on those vehicles, and the distance from

the crest of the hill south to the point of collision. There was evidence that a south-bound car could be seen 300 to 400 feet north of where the Ford convertible was stopped. The plaintiff's evidence was that he had been stopped beside the road for about five minutes and it was three to four seconds from the time the Masters' car came over the hill until the collision occurred. The defendants' evidence was that the distance from the crest of the hill to where the collision occurred was about 105 feet. The defendant testified he was driving between 45 and 50 miles per hour immediately before the collision. The left two feet of the front of the Masters' car cleared and did not come in contact with the rear of the Ford convertible.

The plaintiff's evidence was that all the lights on his two cars were burning at the time except the two taillights on the right side of the Dodge truck. The defendants' testimony was that no lights were on the vehicles and the first knowledge they had of the presence of the automobiles was the reflection of the DeSoto headlights on the taillights of the Ford as the Masters' car came over the crest of the hill. The plaintiff's evidence was that he was standing between the two automobiles which were completely off the pavement when the collision occurred. On the other hand, the defendants' evidence was that the two vehicles between which the plaintiff was standing were on the pavement in the western or southbound lane of travel. The plaintiff's legs were broken and crushed, necessitating long hospital confinement and numerous operations; however, since no question is presented as to the amount of the verdict, we need not review the medical evidence. The submission under the humanitarian doctrine was on the hypothesis that the defendant driver "could have swerved his vehicle to the left, and could thereby have avoided the collision" but negligently failed to do so. The eastern or northbound lane of traffic and the east shoulder of the highway were not obstructed prior to the collision.

The trial court overruled the defendants' motion for a directed verdict in accordance with their motion filed at the close of all the evidence but sustained the defendants' motion for a new trial "for the reason that the Court erred in giving Instruction No. 2 at the request and insistence of the plaintiff, said instruction containing the following words 'was standing between two automobiles mentioned in evidence either on the shoulder or on the pavement—' and said portion being error in that it was not based on the pleadings or proof offered by the plaintiff, but in fact that portion of said instruction which said 'or on the pavement' was in direct conflict with the pleadings and the evidence of plaintiff, and for the further reason that the facts and the evidence did not justify the submission of the case on the humanitarian doctrine with reference to the theory that the accident happened on the shoulder of the road."

■ The trial court's statement that the evidence did not justify a humanitarian submission on the theory that the accident happened on the shoulder of the highway was made before the transcript was prepared. The transcript before us reveals that this theory is amply supported by the evidence. As previously stated, the plaintiff testified the Dodge truck and the Ford convertible were on the shoulder completely off the pavement and that he was standing between them checking the towline. He further stated he saw the lights on the defendants' car when it came over the crest of the hill, that it was "lined up" behind the Ford convertible for three or four seconds before the collision, and he had raised up "to flag him on through" when the accident happened. It is conceded that the Masters car crashed into the rear of the Ford. Since the plaintiff was the prevailing party at the trial, he is entitled to have the evidence viewed most favorably to him and is entitled to all reasonable inferences therefrom.

■ The respondents' first contention in support of the granting of the new trial is

that instruction 2, the plaintiff's verdict-directing instruction, erroneously commingles primary and humanitarian negligence. The import of this contention as expanded in the written argument is that, if plaintiff and his vehicles were located on the shoulder, the defendants' breach of duty was in leaving the pavement, going onto the shoulder and striking the plaintiff which would be primary negligence; and, if the plaintiff and his vehicles were on the pavement in the path of defendants' auto, the duty was to avoid striking plaintiff's vehicles by swerving, and the breach of that duty would constitute humanitarian negligence.

There is no evidence that the defendants' car swerved onto the shoulder in close proximity to the plaintiff's vehicles. The evidence is sufficient to support a finding that the defendants had an opportunity to discover the plaintiff and avoid the collision by swerving to the left whether the plaintiff was on the shoulder or the pavement. That is the issue submitted by the instruction. The instruction does not hypothesize at what time or in what manner the defendants' automobile came onto the shoulder, if it did do so, or that it swerved to the right when it should have swerved to the left as the defendants seem to imply. This is unlike the case of Lane v. Wilson, Mo.App., 390 S.W.2d 943, 950, cited by the defendants, where the court stated that if the defendant was negligent in swerving to his left and stopping with the front portion of his automobile across the imaginary center line, the act of doing so would constitute primary negligence and would not make a case under the humanitarian doctrine. The instruction in the case at bar did not, directly or by implication, commingle primary negligence with humanitarian negligence, and it is not erroneous on that score.

■ Next the defendants contend that instruction 2 was not supported by evidence tending to prove that the plaintiff was in a position of imminent peril while he was standing on the shoulder of the highway. The point is further explained in the written argument by the assertion that the plaintiff should not have been permitted to instruct that the shoulder of the highway was "within the zone of imminent peril from Respondents' automobile traveling south on the paved portion of said highway." The instruction is not and need not have been limited to a hypothesis that the defendants were driving on the paved portion. It provides that the jury find that the defendant Edwin C. Masters was driving "his motor vehicle in a southerly direction at the time and place mentioned in the evidence". The plaintiff's evidence would support a finding that he was driving on the shoulder. On the other hand, the defendants' evidence was that the Masters automobile was being driven on the pavement. Regardless of where the plaintiff was standing, the evidence demonstrates that he was in a position of imminent peril. See Hinrichs v. Young, Mo., 403 S.W.2d 642 (decided June 13, 1966).

In support of this contention, the defendants cite cases holding that a humanitarian case cannot rest solely on speculation, conjecture and surmise regarding such basic elements as plaintiff's position of imminent peril and where it began. The defendants cite such cases as Lane v. Wilson, Mo.App., 390 S.W.2d 943; Bunch v. Missouri Pacific R. Co., Mo., 386 S.W.2d 40; Davis v. Quality Oil Co., Mo., 353 S.W.2d 670, and McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704. These cases in general involved situations where there was no opportunity for the defendant to avoid the accident after the act occurred which imperiled or endangered the plaintiff.

There can be no doubt that the plaintiff was in a position of imminent peril as he stood between his two vehicles directly in the path of the defendants' car moving swiftly toward them. The evidence was sufficient to prove that fact. Leaving out of consideration for the moment whether the plaintiff was entitled to the alternative

submission as to his position, the main issue for the jury's determination was whether to believe the plaintiff's or the defendants' evidence regarding the distance from the crest of the hill to the place where the plaintiff's vehicles stood and at what place and time they were discoverable. The defendants' opportunity to avoid the collision by swerving to the left depended chiefly on this determination. We hold the evidence was sufficient to support a finding that the plaintiff was in a position of imminent peril regardless of whether he was off or on the pavement. The main factual issue for the jury was whether his position of peril was discoverable in time for the defendant driver to swerve to the left and avoid the collision.

The defendants' next contention is that the instruction was erroneous in that it permitted a recovery on evidence directly in conflict with plaintiff's "pleadings and evidence on material facts". Stated as a separate point is the related and supporting contention that the plaintiff's testimony that he was on the shoulder and not on the pavement when the collision occurred amounted to a judicial admission depriving him of evidence to the contrary because the testimony was not a mere estimate or opinion but was understandingly and unequivocally given.

As the defendants impliedly recognize, a plaintiff's testimony consisting of estimates of speed, distances, time or position does not conclusively bind him, and he may avail himself of other testimony given by his own or his opponent's witnesses. Migneco v. Eckenfels, Mo., 397 S.W.2d 682, 686 [4]; Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24, 31 [4], 32 [7]. A party is not precluded from relying on more favorable testimony of other witnesses unless such other testimony is inconsistent with his theory of the case or contrary to physical facts. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280 [2]; Smith v. Siercks, Mo., 277 S.W.2d 521, 525 [3].

The plaintiff's testimony that his motor vehicles were on the shoulder, completely off the pavement, did not rise to the dignity of a judicial admission which is a more or less formal act done in the course of judicial proceedings which waives or dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 917 [19–21]; Smith v. Siercks, Mo., 277 S.W.2d 521, 525 [1–3]. The defendants did not rely on the plaintiff's statement but disputed it, and it was for the jury to say which version of the facts was true. Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 20 [3]; Loveless v. Locke Distributing Co., Mo., 313 S.W.2d 24, 31 [4]; Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1019 [9].

The plaintiff's petition contained nine specifications of primary negligence; he also pleaded the humanitarian doctrine of negligence based on defendants' failure to swerve or turn their automobile aside so as to avoid the collision. Both defendants pleaded contributory negligence, and in their motions for a directed verdict at the close of all the evidence asserted that the plaintiff was guilty of contributory negligence "in failing to exercise the highest decree of care for his own safety by voluntarily placing himself in a position of imminent peril, between the pick-up truck and the Ford automobile, on the paved and travelled portion of said highway in the nighttime, when the plaintiff, knew, or in the exercise of the highest degree of care he should have known, that there was present and immediate danger of a collision between a southbound vehicle and such vehicles." The motions for a directed verdict were overruled although there was evidence to support the defense of contributory negligence. Since primary negligence was not submitted, it was abandoned, and the plaintiff went to the jury on the humanitarian theory of negligence which permits a recovery even though the plaintiff was

negligent in getting into a position of imminent peril which fact was hypothesized by instruction 2.

We have further concluded that the defendants' testimony that the plaintiff and his vehicles were on the pavement was not inconsistent or "at war" with the theory of humanitarian negligence submitted by plaintiff's instruction 2. The basic theory submitted was that the plaintiff standing between his two vehicles was in a position of imminent peril, and that the defendant driver in the exercise of the highest degree of care could have discovered plaintiff's peril in time to have safely swerved to his left and avoided the collision and injury but that the defendants negligently failed to do so. Whether the plaintiff was on the shoulder as he testified or on the pavement as indicated by the defendants' evidence made a difference laterally, that is, from east to west of perhaps five to ten feet; but it did not make any material difference in the distance longitudinally, that is, from north to south. The material and decisive fact question for the jury's determination was the disputed distance from north to south between the plaintiff's and the defendants' motor vehicles when plaintiff's peril was discoverable and effective action to avoid the collision could have been taken.

The plaintiff's evidence tended to prove that a person at the crest of the hill could see an automobile more than 300 feet south of him whether it was on the shoulder or on the pavement. In these circumstances the hypothesis that the plaintiff and his vehicles were on the pavement was not inconsistent or "at war" with the ultimate question on which the defendants' liability depended under the humanitarian rule, and the plaintiff was entitled to adopt it as an alternative. Migneco v. Eckenfels, Mo., 397 S.W.2d 682, 686 [5]; Crook v. Dooley, Mo., 389 S.W.2d 809, 813 [6]; Ayres v.

Keith, Mo., 355 S.W.2d 914, 918 [4, 5]; Stodgell v. Mounter, Mo., 344 S.W.2d 100, 102 [1, 2]. Migneco v. Eckenfels involved an automobile collision submitted on a negligent failure to stop or swerve. There was great contrariety in the evidence as to the location of plaintiff's automobile when the collision occurred, but a submissible case was held to have been made under the humanitarian doctrine. Other cases cited have made similar rulings.

This case involves a conflict between the testimony of two parties which is not an unusual occurrence. It is common knowledge that witnesses in the utmost good faith sometimes differ substantially in their accounts of what they saw or heard. The record is not without circumstances tending to explain the plaintiff's adoption of the alternative location of the vehicles. Regardless of which alternative the jury believed, the plaintiff's basic theory of recovery was not destroyed or impaired as a matter of law.

The plaintiff urges that in no event should instruction 2 be held erroneous because Missouri Approved Instructions would be applicable under which the words "either on the shoulder or on the pavement" would be omitted entirely, citing MAI No. 17.15. See also Migneco v. Eckenfels, Mo., 397 S.W.2d 682, 686 [5]. The defendants do not agree to this proposition, but it is not necessary to anticipate and determine that question now. It is sufficient that we find in the circumstances of this case that the inclusion of the location of the plaintiff and his motor vehicles in the alternative was not misleading or prejudicially erroneous for any of the reasons assigned.

Accordingly the order granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict and judgment for the plaintiff.

All of the Judges concur.